## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ZIYANNIE LABOY,** *et. al.,* | : | **CIVIL ACTION** |
| | : | |
| Plaintiffs, | : | |
| | : | |
| **v.** | : | |
| | : | **No. 26-889** |
| **GEICO SECURE INSURANCE CO.,** | : | |
| | : | |
| Defendant, | : | |

**Perez, J.**                                                                                    **June 30, 2026**

### MEMORANDUM

This case arises from Defendant GEICO Secure Insurance Company's ("GEICO") denial of underinsured-motorist ("UIM") benefits to two people who were seriously injured in a car crash in Philadelphia. Plaintiffs Ziyannie Laboy and Emilquiades Sanchez were traveling in a car insured under a policy issued by GEICO to the car's owner—an individual not a party to this litigation and who was not involved in the accident—when another driver ran a red light and struck them. After the at-fault driver's liability coverage proved insufficient to compensate them, Plaintiffs sought UIM benefits under the GEICO policy, and GEICO denied the claim under a policy exclusion. Plaintiffs bring two claims under Pennsylvania law: statutory bad faith under 42 Pa. C.S. § 8371 (Count I) and a violation of the Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201-1 *et seq.* (Count II). Before the Court is GEICO's Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6). ECF No. 5. For the reasons below, the Motion is granted. Count I is dismissed with leave to amend, and Count II is dismissed with prejudice.

I.    **Background**[1]

At approximately 3:30 a.m. on March 30, 2025, Emilquiades Sanchez was driving a car owned by Samer Ortiz, with Ziyannie Laboy as his passenger, on Roosevelt Boulevard in Philadelphia. Compl. ¶ 5. Another driver, Ahsaiah Jackson, ran a red light, crossed into Plaintiffs' lane, and struck the driver's side of their car at a high rate of speed. *Id.* ¶ 7. The impact pushed the car off the road, through a chain-link fence, and into a ditch. *Id.* ¶ 8. Both Laboy and Sanchez were seriously injured. *Id.* ¶¶ 12, 18.

The car Sanchez was driving was insured under a GEICO policy issued to Ortiz ("the Policy"), which provided underinsured-motorist coverage with limits of $100,000 per person and $300,000 per accident. *Id.* ¶¶ 3, 29. Jackson, the at-fault driver, carried only $15,000 in liability coverage per person and $30,000 per accident—far less than needed to compensate Plaintiffs for their injuries. *Id.* ¶¶ 31–33. After Jackson's insurer offered its $15,000 limits, Plaintiffs asked GEICO to consent to the settlement and to pay UIM benefits. *Id.* ¶¶ 34–37, 39. GEICO first advised that the Policy's $100,000/$300,000 UIM limits applied and that a coverage investigation was underway, *id.* ¶ 38, but then later denied the claim," *id.* ¶¶ 41–42 & Exs. H–I.

The Policy was issued at an address in Mason, Ohio. Compl. Ex. A. It provides that it must "be interpreted pursuant to the laws of the state of Ohio." *Id.* § V, General Conditions ¶¶ 15, 17. The Policy's UIM coverage contains two relevant exclusions. The first withdraws coverage for injuries sustained while the insured car is "leased or rented to others or given in exchange for any compensation, including while operated, maintained or used in peer-to-peer vehicle sharing"—

---

[1] For purposes of this motion, the Court accepts the well-pleaded factual allegations in the Complaint as true. The Complaint, originally filed in the Court of Common Pleas of Philadelphia County, is of record as an exhibit to GEICO's notice of removal (ECF No. 1) and is reproduced as Exhibit A to the motion to dismiss (ECF No. 5-2). The GEICO policy and the denial letters are attached to the Complaint as Exhibits A, H, and I.

that is, while the car is made available to others for money through a vehicle-sharing program. The second withdraws coverage while the car is used "for ride-sharing"—that is, to carry passengers for a service such as Uber or Lyft. *Id.* (§ IV, Pt. I, Excl. 13–14).

On January 27, 2026, GEICO sent each Plaintiff a formal denial letter, stating that there was no UIM coverage under the Policy because the vehicle was being used for "peer to peer ride sharing," *id.* ¶¶ 41–42 & Exs. H–I. According to Plaintiffs, the vehicle was not being used for ride sharing when the crash occurred. Sanchez had driven to pick up a friend, Laboy, who did not feel comfortable driving after drinking, and the trip was a favor between friends that "had nothing to do with any kind of ride sharing program." Compl. ¶¶ 43–45.

The Complaint also asserts that GEICO mishandled the claim apart from the denial itself in three ways: GEICO failed to investigate and evaluate the claim, delayed, and made no settlement offer; it misrepresented the available coverage, the value of the claim, and its evaluation of the claim; and it lacked a reasonable basis for the denial and acted in reckless disregard of Plaintiffs' rights. *Id.* ¶¶ 52, 56–57, 61, 64.

Plaintiffs filed this action in the Court of Common Pleas of Philadelphia County on January 29, 2026, raising two claims under Pennsylvania law: statutory bad faith under 42 Pa. C.S. § 8371 (Count I) and a violation of the Unfair Trade Practices and Consumer Protection Law (Count II). GEICO removed the case to this Court on the basis of diversity jurisdiction on February 11, 2026, and moved to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6) on February 18, 2026. Plaintiffs opposed the motion, and GEICO replied. The motion is ripe for decision.

## II.    Legal Standard

A complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility requires more than a sheer possibility of liability. *Iqbal*, 556 U.S. at 678. A complaint that pleads facts consistent with a defendant's liability but stops short of a plausible entitlement to relief does not suffice. *Id.* The Third Circuit applies a two-step analysis: the court first separates the complaint's factual allegations from its legal conclusions, disregarding the latter, then determines whether the remaining facts plausibly give rise to the claimed relief. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). A document "integral to" or "explicitly relied upon in the complaint" may be considered without converting the motion to dismiss into one for summary judgment. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

## III.    Legal Analysis

### A.  Choice of Law

The parties devote much of their dispute to whether Pennsylvania or Ohio law governs. The Court need not resolve that question on this motion because both counts fail under either state's law. A federal court sitting in diversity applies the choice-of-law rules of the forum State. *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 226 (3d Cir. 2007) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). Pennsylvania applies a flexible rule that "permits analysis of the policies and interests underlying the particular issue before the court." *Id.* (quoting *Griffith v. United Air Lines, Inc.*, 203 A.2d 796, 805 (Pa. 1964)). This is the interest/contacts approach, under which the court applies the law of the forum with the most interest in the dispute. *Id.* at 227. The first step is to determine whether a true conflict exists between the two states' laws. *Id.* at 230.

4

Only if a true conflict exists must the court proceed to the second step, which requires it to weigh which state has the greater interest in applying its own law. *Id.* at 231. Where the result is the same under either state's law, no conflict requires resolution, and the court need not choose. *Id.* at 230.

GEICO contends that Ohio law governs because the Policy was issued in Ohio, to Ohio insureds, and it contains a clause selecting Ohio law. GEICO then argues that the Complaint must be dismissed because it pleads only Pennsylvania claims and alleges no violation of Ohio law. However, neither count would survive dismissal under either Pennsylvania or Ohio law, so the Court need not decide which governs.

On the bad-faith claim, Pennsylvania and Ohio law converge on the question that controls this motion: both require Plaintiffs to show that GEICO's decision to deny UIM benefits lacked a reasonable basis. Pennsylvania requires a plaintiff to show that the insurer lacked a reasonable basis to deny benefits and knew of or recklessly disregarded that lack. *Rancosky v. Washington Nat'l Ins. Co.*, 170 A.3d 364, 377 (Pa. 2017). Ohio likewise recognizes a tort claim for breach of an insurer's duty of good faith in the handling and payment of claims where its refusal to pay a claim lacks "reasonable justification." *Zoppo v. Homestead Ins. Co.*, 644 N.E.2d 397, 400 (Ohio 1994). On the threshold question this motion presents—whether the allegations, taken as true, plausibly show that GEICO's denial lacked a reasonable basis—the two standards demand the same showing.[2] The Complaint fails to make that showing under either law, as explained in further detail in Section III.B below, so the choice between them does not determine the outcome.

---

[2] The two bodies of law diverge in structural and remedial ways that do not bear on this motion. Pennsylvania's § 8371 affords a statutory remedy carrying interest, attorney's fees, and punitive damages on a finding of bad faith. 42 Pa. C.S. § 8371. Ohio's common-law action carries no such remedy. *See Hoskins v. Aetna Life Ins. Co.*, 452 N.E.2d 1315, 1319–20 (Ohio 1983); *Zoppo*, 644 N.E.2d at 397. Those differences would present a true conflict requiring a full interest analysis at a later stage, *see Hammersmith*, 480 F.3d at 230, but they do not affect the pleading standard.

Count II is different because the two states' consumer protection laws may conflict. Nonetheless, two independent reasons guide the Court not to resolve the choice-of-law question with respect to Plaintiffs' consumer protection claim. First, the Policy's Ohio choice-of-law clause does not reach the claim. Under Pennsylvania's choice-of-law rules, to determine whether a contractual choice-of-law clause should govern, courts must determine whether the parties chose Ohio law to govern the particular claim at issue. *Assicurazioni Generali, S.p.A. v. Clover*, 195 F.3d 161, 164 (3d Cir. 1999). The Policy's clause selects Ohio law for a single purpose—it provides that the Policy is "interpreted pursuant to the laws of the state of Ohio." Compl. Ex. A (§ V, General Conditions ¶ 17). That phrasing demonstrates that the contracting parties chose Ohio law to govern disputes over what the Policy means. *Assicurazioni Generali*, 195 F.3d at 165 (treating such a clause as governing "interpretation of the policy's terms"). Count II raises no such dispute. It is a statutory claim under Pennsylvania's consumer protection statute alleging that GEICO handled the UIM claim unfairly and deceptively, and its resolution turns on no policy term. Compl. ¶ 64. The contracting parties thus did not choose Ohio law to govern this claim. Second, Count II turns entirely on Pennsylvania law—the framework Plaintiffs themselves invoke—and, as explained below, the claim fails to satisfy Pennsylvania's own requirements. *See Hammersmith*, 480 F.3d at 230. Accordingly, no conflict with Ohio law is outcome-determinative.

### B.  Statutory Bad Faith

Plaintiffs' bad-faith claim fails because the Complaint pleads no facts showing GEICO lacked a reasonable basis to deny coverage. GEICO denied the UIM claim under the Policy's peer-to-peer vehicle sharing exclusion. Compl. Exs. H–I. Plaintiffs allege the vehicle was not being used for ride sharing, but they plead no facts showing that the peer-to-peer exclusion does not

apply. Without facts placing the claim outside that exclusion, the Complaint does not plausibly establish that the denial lacked a reasonable basis.

To state a bad faith claim, a plaintiff must plead facts showing both that the insurer lacked a reasonable basis to deny benefits and that it knew of or recklessly disregarded that lack. *Rancosky*, 170 A.3d at 377. An insurer that properly denies coverage does not lack a reasonable basis. *See Cresswell v. Pa. Nat'l Mut. Cas. Ins. Co.*, 820 A.2d 172, 179 (Pa. Super. Ct. 2003). Even where a denial later proves incorrect, the insurer does not act in bad faith so long as its reading of the policy was reasonable. *Terletsky v. Prudential Prop. & Cas. Ins. Co.*, 649 A.2d 680, 688–90 (Pa. Super. Ct. 1994). A bad-faith claim must rest on specific factual allegations of the insurer's conduct; a conclusory assertion that the insurer lacked a reasonable basis does not survive a motion to dismiss. *See Kiessling v. State Farm Mut. Auto. Ins. Co.*, No. 18-4281, 2019 WL 634639, at *4 (E.D. Pa. Feb. 14, 2019); *Sypeck v. State Farm Mut. Auto. Ins. Co.*, No. 3:12-CV-324, 2012 WL 2239730, at *3 (M.D. Pa. June 15, 2012).

When the denial rests on a policy exclusion, the insured must plead facts showing that the insurer lacked a reasonable basis to invoke it. *See Dayton v. Auto. Ins. Co. of Hartford*, No. 3:20-1833, 2021 WL 5163221, at *4 (M.D. Pa. Nov. 5, 2021). An insurer that denies a claim under an applicable exclusion has a reasonable basis to do so. *Cresswell*, 820 A.2d at 179; *see also Morrison v. Mountain Laurel Assur. Co.*, 748 A.2d 689, 692 (Pa. Super. Ct. 2000). The standard is the same under Ohio law, which treats a mere refusal to pay as insufficient and requires that an insurer's belief that no coverage exists rest on "circumstances that furnish reasonable justification." *Hoskins v. Aetna Life Ins. Co.*, 452 N.E.2d 1315, 1320 (Ohio 1983); *see also Zoppo*, 644 N.E.2d at 400.

Here, the Complaint pleads no facts showing GEICO lacked a reasonable basis to invoke the peer-to-peer exclusion. The two exclusions, peer-to-peer vehicle sharing and ride sharing,

reach different conduct. The peer-to-peer exclusion applies when the insured's own car is rented or lent to others for compensation—including when it is shared for a fee through a vehicle-sharing platform. The ride-sharing exclusion applies when the car is used to transport passengers for a network service such as Uber or Lyft.

The denial letters attached to the Complaint disclaim UIM coverage on the ground that the vehicle was used in peer-to-peer vehicle sharing, which the Policy excludes. Compl. Exs. H–I. Plaintiffs allege only that the trip was a favor between friends that had nothing to do with *ride sharing*. Compl. ¶¶ 43–45. It says nothing of peer-to-peer sharing. The ride-sharing exclusion, however, was not the basis for the denial. The peer-to-peer exclusion was. The Complaint does not show that Plaintiffs obtained the car in a way that takes the claim outside the peer-to-peer exclusion. They do not explain, for example, how Sanchez came to be driving a car owned by Ortiz—whether he rented it, paid Ortiz for its use, took it through a vehicle-sharing arrangement, or instead borrowed it as a favor with no money changing hands—nor does the Complaint show any relationship between either Plaintiff and Ortiz from which the terms of that use could be inferred. Plaintiffs have, therefore, failed to allege facts showing GEICO lacked a reasonable basis to apply the peer-to-peer vehicle sharing exclusion.

The second element of a bad faith claim turns on the insurer's state of mind: whether it knew of or recklessly disregarded its lack of a reasonable basis. *Rancosky*, 170 A.3d at 377. That knowledge runs to the lack of a reasonable basis, so an insurer cannot recklessly disregard a reasonable basis that does not exist. *See Terletsky*, 649 A.2d at 690. The Complaint does not plead the first element; it, therefore, cannot satisfy the second.[3]

---

[3] Ohio requires no separate showing of intent or knowledge; its bad-faith tort turns on the single, objective question of reasonable justification, and the claim fails under Ohio law for the same reason it fails at Pennsylvania's first element. *Zoppo*, 644 N.E.2d at 400.

The Complaint's remaining allegations of claims mishandling do not state an independent bad faith claim. Bad faith can reach beyond the denial itself to an insurer's investigation and communication. *Condio v. Erie Ins. Exch.*, 899 A.2d 1136, 1142–43 (Pa. Super. Ct. 2006). That conduct must still lack a reasonable basis, though, and an insurer that reasonably denies coverage does not act in bad faith by declining to investigate further, offer settlement, or pay a claim it was entitled to reject. *Rancosky*, 170 A.3d at 377; *Terletsky*, 649 A.2d at 688–89; *see Hoskins*, 452 N.E.2d at 1320 (mere refusal to pay is not, in itself, bad faith, and the insurer's conduct need only rest on circumstances furnishing reasonable justification). The allegations that GEICO failed to investigate, delayed, and made no settlement offer, Compl. ¶ 61, flow from the same denial that supplies GEICO's reasonable basis. They are pleaded as categories of misconduct without supporting facts. They add nothing to the denial theory and fail with it.

For these reasons, Count I is dismissed without prejudice.

### C. Unfair Trade Practices and Consumer Protection Law

Count II fails for three independent reasons. First, the UTPCPL governs how an insurer sells a policy, not how it handles a claim. Pennsylvania's bad-faith statute, 42 Pa. C.S. § 8371—the basis for Count I—supplies the exclusive remedy for claims handling. Second, the UTPCPL reaches only an insurer's improper performance of an obligation, not its refusal to perform. Third, the UTPCPL's private right of action runs only to a purchaser of the policy who justifiably relied on the insurer's conduct. The substance of Count II is claims handling; neither Plaintiff purchased the Policy; and neither pleads reliance. Each defect independently requires dismissal.

The UTPCPL governs how an insurer sells a policy, not how it handles a claim. The statute gives a private right of action to a person who suffers an ascertainable loss from an unlawful method, act, or practice. 73 P.S. § 201-9.2(a). Courts construe the UTPCPL liberally to serve its

remedial purpose of preventing fraud and deception. *Commonwealth v. Monumental Props., Inc.*, 329 A.2d 812, 816 (Pa. 1974). However, that purpose does not reach the handling of an insurance claim, for which the bad faith statute, § 8371, supplies the exclusive remedy. *Wenk v. State Farm Fire & Cas. Co.*, 228 A.3d 540, 550 (Pa. Super. Ct. 2020).[4] A claim's character turns on its substance, not its label: conduct that amounts to claims handling does not become actionable under the UTPCPL merely because a complaint calls it a misrepresentation. *Holovich v. Progressive Specialty Ins. Co.*, 600 F. Supp. 3d 572, 584–85 (E.D. Pa. 2022). A plaintiff cannot escape § 8371 by relabeling a claims-handling dispute as a misrepresentation in the sale of the policy.

Even a plaintiff who alleges that the misrepresentation induced his purchase cannot state a claim under the UTPCPL when the substance of the dispute is claims handling. *Holovich v. Progressive Specialty Insurance Company* is instructive. There, the insured was in a car accident: another driver struck his parked car, and his insurer paid to repair it but refused to pay for the resulting loss in the car's resale value. *Holovich*, 600 F. Supp. 3d at 576. He sued over that refusal, and among his claims he asserted a UTPCPL violation, alleging that the insurer had misrepresented his coverage and that the misrepresentation induced him to buy the policy. *Id.* at 585. The court looked past that label to the core of the claim—how the insurer handled his diminished-value claim, not any deception in the sale—and dismissed the UTPCPL claim, granting leave to replead only a claim arising from the policy's sale. *Id.*

Here, the substance of Count II is GEICO's handling of the UIM claim, not any deception in selling the Policy. Like the insured in *Holovich*, Plaintiffs cast a coverage dispute as a

---

[4] The result is the same under Ohio law. Ohio's analog to the UTPCPL, the Consumer Sales Practices Act, does not reach the business of insurance: transactions between an insurer and its customers, including the handling of a claim, are excluded from the Act's definition of a "consumer transaction." Ohio Rev. Code § 1345.01(A); *Dillon v. Farmers Ins. of Columbus, Inc.*, 47 N.E.3d 794, 800 (Ohio 2015) (holding that an insurer "cannot be a party to a consumer transaction" and so "cannot commit an unfair or deceptive act or practice" under the CSPA). Plaintiffs would, therefore, have no consumer protection claim under Ohio law any more than under Pennsylvania's.

misrepresentation, labeling GEICO's conduct as misrepresenting the available coverage, the value of their claim, and its settlement position. Compl. ¶ 64. As in *Holovich*, however, the conduct Plaintiffs complain of is claims handling: GEICO's denial of benefits, its evaluation of and response to the claim, and its settlement decisions. *Id.* The one allegation that touches the sale—that GEICO advertised its policies to induce consumers to buy them—is conclusory. *Id.* ¶ 64(f).

Furthermore, unlike the insured in *Holovich*, who at least alleged that a misrepresentation induced his own purchase, Plaintiffs allege no purchase at all. Their claim rests entirely on how GEICO handled the UIM claim. Section 8371 therefore supplies the exclusive remedy, and the UTPCPL claim cannot proceed. Plaintiffs do not engage this distinction. They argue instead that the UTPCPL must be read broadly and that they need not plead the elements of common law fraud. Neither point matters. Reading the statute broadly cannot change what it covers.

Even if the UTPCPL reached claims handling, Plaintiffs' claims would fail for the additional reason that they allege only nonfeasance by GEICO, not malfeasance. Only malfeasance is actionable under the UTPCPL. *Horowitz v. Fed. Kemper Life Assur. Co.*, 57 F.3d 300, 307 (3d Cir. 1995). An insurer commits malfeasance when it performs an obligation improperly, and nonfeasance when it simply fails to act. *Id.* A mere refusal to pay a claim is a failure to act, not improper performance, and a failure to act cannot support a UTPCPL claim. *Id.*; *see also Nordi v. Keystone Health Plan W., Inc.*, 989 A.2d 376, 385 (Pa. Super. Ct. 2010) (citing *Gordon v. Pa. Blue Shield*, 548 A.2d 600, 604 (Pa. Super. Ct. 1988)) ("Mere refusal to pay a claim, or failure to investigate or take other action, is nonfeasance and is, thus, not actionable.").

*Horowitz* is on point. There, the insured submitted a claim for the proceeds of a life insurance policy, and the insurer refused to pay, giving its reasons in a letter. *Horowitz*, 57 F.3d at 307. The plaintiffs argued that the letter was unfair and deceptive because it misled the insured

11

into believing she could not recover. *Id.* The Third Circuit held that a letter announcing a refusal to pay is a failure to perform rather than improper performance. *Id.*

Here, the conduct Plaintiffs allege is nonfeasance—the same refusal to pay that *Horowitz* held the UTPCPL does not reach. Like the insurer in *Horowitz*, GEICO refused to honor the coverage and pay the UIM benefits Plaintiffs believe they are owed. Compl. ¶¶ 64(a), (c). Also like the plaintiffs in *Horowitz*, Plaintiffs recast that refusal as GEICO "misrepresenting" the coverage, its evaluation of the claim, and the claim's value. *Id.* ¶¶ 64(a), (b), (h). The label does not change the conduct: a refusal to pay is a failure to perform, not improper performance, and remains nonfeasance even when the insured calls it deceptive. *Horowitz*, 57 F.3d at 307. The allegations that GEICO failed to evaluate, respond to, and negotiate the claim describe the same failure to act, which is also nonfeasance, Compl. ¶ 64(b), (i); *Nordi*, 989 A.2d at 385, and the allegation that GEICO created a likelihood of confusion or misunderstanding is boilerplate that alleges no malfeasance at all, Compl. ¶ 64(g); *see Purcell v. State Farm Mut. Auto. Ins. Co.*, No. 11-7004, 2012 WL 425005, at *6 (E.D. Pa. Feb. 10, 2012) (dismissing a UIM insured's UTPCPL claim resting on nearly identical allegations).

Finally, Plaintiffs cannot state a UTPCPL claim because they did not purchase the Policy, and they plead no justifiable reliance. The statute's private right of action runs only to a person who purchased or leased the goods or services at issue; a non-purchaser has no standing to sue. 73 P.S. § 201-9.2(a); *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55–57 (3d Cir. 1992). A plaintiff who clears that threshold must still plead and prove that he justifiably relied on the insurer's wrongful conduct and suffered a loss as a result. *Gregg v. Ameriprise Fin., Inc.*, 245 A.3d 637, 646 (Pa. 2021); *Toy v. Metro. Life Ins. Co.*, 928 A.2d 186, 202 (Pa. 2007). Reliance is not presumed. *Toy*, 928 A.2d at 202.

A non-purchaser cannot sue under the UTPCPL even when he is injured a covered vehicle and seeks the policy's benefits. The plaintiff in *Katz* was a passenger hurt in a car accident who sought UIM benefits on the driver's policy and alleged that the insurer had concealed other coverage. *Katz*, 972 F.2d at 54–55. He argued that he could sue as an intended beneficiary whose reliance was foreseeable. *Id.* at 56. The Third Circuit rejected the theory: he had conducted no transaction with the insurer, so he was not a purchaser and had no standing. *Id.* at 56–57. So too here. The Policy belonged to Ortiz; Laboy and Sanchez were occupants of his car who made a UIM claim under the Policy that they had no part in buying. Compl. ¶¶ 3, 5. Plaintiffs conducted no transaction with GEICO. Plaintiffs are not purchasers and have no standing to sue. *Katz*, 972 F.2d at 56–57. Nor could they have relied on any representation in the sale of a policy they did not buy, and the Complaint pleads no reliance of any other kind. Compl. ¶¶ 63–65. The one sale-related allegation—that GEICO advertised to induce consumers to buy its policies—does not allege that these Plaintiffs ever saw or relied on that advertising. Compl. ¶ 64(f). Without a purchase or reliance, the claim cannot proceed.

Standing is a threshold every UTPCPL theory must clear, and Plaintiffs cannot clear it. *Katz*, 972 F.2d at 56–57. Amendment cannot cure the defect, so Count II must be dismissed with prejudice.

## IV.    Conclusion

For the foregoing reasons, GEICO's motion to dismiss is granted. Count I is dismissed with leave to amend, so that Plaintiffs may plead facts showing the peer-to-peer exclusion does not apply. Count II is dismissed with prejudice.

An appropriate Order follows.